1  ALEXANDER KAPLAN (*Pro Hac Vice Application to be Filed*)
2  MATTHEW E. COOPER (*Pro Hac Vice Application to be Filed*)
   OPPENHEIM + ZEBRAK, LLP
3  4530 Wisconsin Avenue, NW, 5th Floor
   Washington, DC 20016
   Telephone: 202-480-2999
4  E-mail:    alex@oandzlaw.com
              mcooper@oandzlaw.com
5
6  KAREN S. FRANK (State Bar No. 130887)
   THOMAS A. HARVEY (State Bar No. 235342)
7  ABRAHAM M. ANDRADE III (State Bar No. 321264)
   COBLENTZ PATCH DUFFY & BASS LLP
   One Montgomery Street, Suite 3000
8  San Francisco, California 94104-5500
   Telephone: 415.391.4800
9  Facsimile: 415.989.1663
   Email:     kfrank@cpdb.com
10             ef-tah@cpdb.com
               ef-ama@cpdb.com
11
   Attorneys for Plaintiffs
12

13                  **UNITED STATES DISTRICT COURT**

14                **NORTHERN DISTRICT OF CALIFORNIA**

15

16  BIG MACHINE MUSIC, LLC; CONCORD          Case No.
    MUSIC PUBLISHING LLC; CONCORD
17  MUSIC GROUP, INC.; HIPGNOSIS SFH I       **COMPLAINT AND JURY DEMAND**
    LIMITED; HIPGNOSIS SONGS GROUP,
18  LLC; PEERMUSIC III, LTD.; POLYGRAM       Trial Date:        None Set
    PUBLISHING, INC.; PULSE 2.0, LLC;
19  RESERVOIR MEDIA MANAGEMENT,
    INC.; SONGS OF PEER, LTD.; SONGS OF
20  UNIVERSAL, INC.; LYRIC COPYRIGHT
    SERVICES, L.P.; UNIVERSAL MUSIC –
21  MGB NA LLC; UNIVERSAL MUSIC – Z
    TUNES LLC; UNIVERSAL MUSIC CORP.;
22  UNIVERSAL MUSICA, INC.,

23               Plaintiffs,

24        v.

25  SHENZHEN QUTUI TECHNOLOGY CO.,
    LTD.,
26
                 Defendant.
27

28

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Plaintiffs Big Machine Music, LLC; Concord Music Publishing LLC; Concord Music Group, Inc.; Hipgnosis SFH I Limited; Hipgnosis Songs Group, LLC; Peermusic III, Ltd.; Polygram Publishing, Inc.; Pulse 2.0, LLC; Reservoir Media Management, Inc.; Songs of Peer, Ltd.; Songs of Universal, Inc.; Lyric Copyright Services, L.P.; Universal Music – MGB NA LLC; Universal Music – Z Tunes LLC; Universal Music Corp.; Universal Musica, Inc. (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their Complaint against Shenzhen Qutui Technology Co., Ltd. ("Defendant"), developers, owners, and operators of the app "Vinkle," asserting claims of direct, contributory, and vicarious copyright infringement. Plaintiffs allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters.

## NATURE OF THE CASE

1. Plaintiffs are major and independent music publishers that create, produce, acquire, license, and otherwise exploit musical compositions, both in the United States and internationally. Collectively, Plaintiffs have invested significant resources developing, marketing, and licensing countless iconic musical compositions and modern hit songs, including, among many others, musical compositions recorded by Justin Bieber, Katy Perry, Harry Styles, and Ed Sheeran. Plaintiffs, on behalf of themselves and their representative songwriters, bring this action seeking redress for Defendant's willful copyright infringement.

2. Defendant owns and operates the popular music video maker app, Vinkle, a mobile phone app distributed on the Google Play store and Apple App Store. Vinkle is in blatant violation of copyright law because it is built based upon a library of copyrighted musical works that Defendant neither owns nor has obtained a license to use. Defendant has brazenly copied voluminous copyrighted musical works to Vinkle's servers, as the foundation for Vinkle, and provides them to users of Vinkle to incorporate into short "music videos."

3. Apps like Vinkle, in today's social media environment, are becoming increasingly aggressive in misappropriating music owned by members of the music publishing community, including Plaintiffs. These apps simply *take* the music and earn significant profits off the backs of songwriters and music publishers, all the while knowing—but disregarding—that they must obtain

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

a license to use the music, assuming they will never get caught.  In doing so, the app proprietors not only engage in willful copyright infringement but also blatantly violate the Google Play Policies and Apple App Store Review Guidelines.  Nonetheless, apps like Vinkle appear on those platforms and copyright owners are left to fight this piracy.  As this case demonstrates, it is critical that those responsible for the infringing activity be stopped and held accountable.

4.      Exploiting copyrighted music for which Defendant has no license is integral to Vinkle's business model, including to lure users to purchase a Vinkle subscription.  Vinkle provides its users with "templates" to create videos.  The templates are short clips that contain stock images and video content set to copyrighted music.  Users select their desired template and upload their own images or videos to replace the stock images or video content in the template to create their personalized music video.  While users upload their images and videos to personalize the template, Defendant has already uploaded the music and set each template to a specific copyrighted musical work.  Vinkle's templates can be searched by the music associated with them, meaning users can search by artist, song, or musical genre to find a template that contains the music they want to sync to their images and videos.

5.      Without a subscription, Vinkle users do not have access to all templates, are subject to location-based advertising within the app and are left with music videos blurred by a Vinkle watermark.  Alternatively, users can purchase a premium subscription for $5.99 per week or $29.99 per year.  Premium users have access to "more than 1000+ templates," which each include a sound recording and song synched to the video.  Premium use is ad-free, and Vinkle does not impose a watermark on the music videos.

6.      Vinkle highlights users' ability to share the finished music videos, proclaiming that users can "[s]hare right to YouTube, Instagram, Facebook, Mail, Messages, and more."  Through this feature, Vinkle encourages users to create a copy of the music video by downloading it to their device, which they can then upload to social media platforms or share person to person.  Vinkle provides direct in-app links to TikTok, Instagram, Facebook, Snapchat, and other popular social media platforms to encourage such downloading, uploading, and sharing.

7.      Vinkle's exploitation of copyrighted musical works is essential to its music video

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**COMPLAINT AND JURY DEMAND**

1  making service, which has proved enormously popular.  At the time of Vinkle's most recent

2  update, April 22, 2022, the app had been downloaded more than 10 million times on the Google

3  Play store alone and received more than 535,000 ratings from its users, averaging 4.0 out of 5

4  stars.

5      8.      Defendant's unauthorized use of Plaintiffs' copyrighted musical works has caused,

6  and continues to cause, Plaintiffs significant and irreparable harm.  Through its conduct,

7  Defendant is liable for the direct infringement of Plaintiffs' exclusive rights under copyright law to

8  reproduce, adapt, distribute, and publicly perform their works.  Defendant is additionally liable,

9  under the established theories of contributory and vicarious infringement, for the infringing acts of

10  its users downloading and uploading the music videos.  Furthermore, because Defendant itself

11  selects and uploads the copyrighted works, all the infringement in the app occurs by reason of

12  Vinkle's own volitional conduct.

13                              **JURISDICTION AND VENUE**

14      9.      This is a civil action in which Plaintiffs seek damages and injunctive relief for

15  copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, as amended.  The Court

16  thus has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a).

17      10.     The Court has specific personal jurisdiction over Defendant pursuant to Cal. Code

18  Civ. Proc. § 410.10.  Defendant has engaged in substantial activities purposefully directed at the

19  State of California, and the claims asserted herein arise from and relate to those extensive

20  activities and Defendant's contacts therefrom.  Defendant regularly does or solicits business,

21  engages in a continuous and systematic course of conduct, and derives substantial revenue from

22  goods or services used or consumed or services rendered in California and this District.  In

23  particular, and without limitation:

24          a.      Defendant knowingly and intentionally markets, contracts to supply, and

25                  supplies its products and services to persons in California and this District.

26                  Defendant enters into agreements with persons in California who pay

27                  money to Defendant for use of Vinkle's subscription-based service, and

28                  who provide Defendant with their physical location in California.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**COMPLAINT AND JURY DEMAND**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1    Defendant uses computers, computer networks, and/or servers in California

2    and in this District for its Vinkle service, including to deliver infringing

3    digital material from servers in San Mateo, California.  Individuals using

4    Vinkle in California download their music videos to their devices, creating

5    copies of copyrighted musical works in California. Additionally, several of

6    the Plaintiffs are either incorporated in California and/or have their principal

7    place of business in California.  Plaintiffs' injuries complained of herein

8    arise out of these interactions.

9     b. Defendant has also entered into contracts with businesses in California and

10   this District related to the distribution and service of its Vinkle app on both

11   the Google Play and the Apple App Store.  Vinkle reaches the public as a

12   direct result of Defendant's deliberate decisions and actions to direct its app

13   to Google Play and the Apple App Store in California.  Defendant's

14   contracts with Apple and Google include a forum selection clause under

15   which Defendant has agreed to jurisdiction in California and this District for

16   disputes related to those contracts.

17    c. Defendant also advertises Vinkle using events specific to and taking place

18   in California, such as the music festival, Coachella.

19    11. Alternatively, the Court has specific personal jurisdiction over Defendant pursuant

20   to Federal Rule of Civil Procedure 4(k)(2)—the so-called "federal long-arm statute."  Defendant

21   has extensive contacts with the United States as a whole.  Defendant overwhelmingly directs its

22   business into the United States, including with respect to the matters giving rise to this lawsuit.

23   For instance, and without limitation:

24    a. Defendant filed to register the trademark "Vinkle" in the United States on

25   November 3, 2020, and its application was granted on December 21, 2021.

26   As part of its application, Defendant filed a Statement of Use of the Vinkle

27   mark, asserting that the mark has been used in commerce in the United

28   States since 2019 in connection with, inter alia, "computer application

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

software for mobile phones, namely, software for making Instant Music Videos."

b.    Defendant uses servers for Vinkle—including for hosting and distributing infringing content—in the United States, including in California.

c.    A significant portion of Vinkle's users are located in the United States and make copies of the Vinkle music videos containing infringing copyrighted content, including content that infringes Plaintiffs' copyrights that Vinkle's users download and distribute in the United States on platforms such as Facebook, YouTube, Twitter, and Instagram, which are based in the United States.

d.    Defendant has commercial relationships with a variety of U.S. companies that are integral to the operation of Vinkle, including Google, Apple, Alibaba Cloud US LLC, and others.

e.    Defendant uses location-based advertising to target Vinkle users within the United States with advertisements relevant to their location and collects location information from its users present in the United States to do so.

f.    Defendant advertises both its app and the premium subscription to its app using events specific to the United States, thus targeting individuals located in the United States.  Posts on Vinkle's official Instagram page offer giveaways related to United States holidays such as Mother's Day, Father's Day, Thanksgiving, and the Fourth of July.

Plaintiffs' injuries arise out of Defendant's contacts with the United States, which include Defendant promoting, maintaining, and advertising the use of its infringing application, and distributing the infringing music files to consumers throughout the United States.  Plaintiffs suffer the effects of this infringement across the United States.

12.    Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the acts of infringement and other events and omissions complained of herein occur, or have occurred, in this District, and this is a District in which Vinkle may be found.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

## THE PARTIES

**Big Machine**

13.     Plaintiff Big Machine Music, LLC ("Big Machine") is a Delaware limited liability company with its principal place of business in Tennessee.

**Concord**

14.     Plaintiff Concord Music Group, Inc. is a Delaware corporation with its principal place of business in Tennessee.

15.     Plaintiff Concord Music Publishing LLC is a Delaware limited liability company with its principal place of business in Tennessee.

16.     Plaintiff Pulse 2.0, LLC is a Delaware limited liability company with its principal place of business in California.

17.     Plaintiffs Concord Music Group, Inc., Concord Music Publishing LLC, and Pulse 2.0, LLC are referred to herein collectively as "Concord Music Publishing."

**Hipgnosis**

18.     Plaintiff Hipgnosis Songs Group, LLC is a Delaware limited liability company with its principal place of business in California.

19.     Plaintiff Hipgnosis SFH I Limited is a company organized under the laws of England and Wales.

20.     Plaintiffs Hipgnosis Songs Group, LLC and Hipgnosis SFH I Limited are referred to herein collectively as "Hipgnosis."

**Peer**

21.     Plaintiff Songs of Peer, Ltd. is a Delaware corporation with its principal place of business in New York.

22.     Plaintiff Peermusic III, Ltd. is a Delaware company with its principal place of business in New York.

23.     Plaintiffs Songs of Peer, Ltd. and Peermusic III, Ltd. are referred to herein collectively as "Peer."

**COMPLAINT AND JURY DEMAND**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**Reservoir**

24.     Plaintiff Reservoir Media Management, Inc. ("Reservoir") is a Delaware corporation with its principal place of business in New York.

**Spirit**

25.     Plaintiff Lyric Copyright Services, L.P. ("Spirit") is a Delaware corporation with its principal place of business in New York.

**Universal**

26.     Plaintiff Universal Music Corp. is a Delaware corporation with its principal place of business in California.

27.     Plaintiff Songs of Universal, Inc. is a California corporation with its principal place of business in California.

28.     Plaintiff Universal Music – MGB NA LLC is a California limited liability company with its principal place of business in California.

29.     Plaintiff Polygram Publishing, Inc. is a Delaware corporation with its principal place of business in California.

30.     Plaintiff Universal Music – Z Tunes LLC is a New York limited liability company with its principal place of business in California.

31.     Plaintiff Universal Musica, Inc. is a Florida corporation with its principal place of business in California.

32.     Plaintiffs Universal Music Corp., Songs of Universal, Inc., Universal Music – MGB NA LLC, Polygram Publishing, Inc., Universal Music – Z Tunes LLC, and Universal Musica, Inc. are referred to herein collectively as "Universal."

**Vinkle**

33.     Defendant SQTC is a limited liability company with its principal place of business in Shenzhen, China.  Defendant owns and operates the app Vinkle, which it describes as a "music video maker with animated effects and popular music."  Users create short "music videos" by uploading their own images and videos and syncing those images and videos to copyrighted

musical works that Defendant has reproduced on and distributes and performs through the Vinkle app, for which Defendant neither owns nor controls the copyrights, and for which Defendant has not obtained the necessary licenses from the copyright owners.

## PLAINTIFFS AND THEIR BUSINESSES

34.    Plaintiffs are highly respected music publishers and songwriters and/or their representatives whose musical compositions have been exploited on the Vinkle app without license or compensation.  Each Plaintiff invests substantial money, time, effort, and talent to develop, produce, publish, administer, acquire, license, and otherwise exploit the copyrights in their musical works.

35.    Plaintiffs own and/or control in whole or in part the exclusive rights to millions of musical works, including the compositions listed on **Exhibit A**, which is illustrative and non-exhaustive.  All the musical works listed on **Exhibit A** have been registered with the U.S. Copyright Office, or are foreign works otherwise exempt from the Copyright Act's registration requirements.

36.    Big Machine represents the publishing side of Big Machine Records, an independent music powerhouse based in Nashville.  Big Machine holds rights to the catalogs of numerous leading country artists, including Luke Combs and Brett Young.

37.    The entities comprising Concord Music Publishing represent the music publishing division of Concord, the independent, worldwide leader in the development, management and acquisition of sound recording, music publishing and theatrical performance rights, with rights in over six hundred thousand copyrighted musical works by celebrated songwriters, composers and lyricists, including, for example, "Adore You" (as recorded by Harry Styles).

38.    The entities comprising Hipgnosis form Hipgnosis Songs Fund, which was founded in 2018 and has quickly acquired a vast catalog of hit songs such as "Treat You Better" (as recorded by Shawn Mendes).

39.    The entities comprising Peer make up Peermusic, which is the largest independent music publisher in the world.  Founded over 90 years ago, the Peer Plaintiffs hold exclusive rights to seminal classic works and contemporary works alike, including for example, "Yummy" (as

**COMPLAINT AND JURY DEMAND**

1  recorded by Justin Bieber), "Firework" (as recorded by Katy Perry), and "Mambo No. 5" (as

2  recorded by Lou Bega).

3       40.     Reservoir is an independent music company based in New York, with offices in

4  Los Angeles, Nashville, London, Toronto, and Abu Dhabi. Reservoir holds over 130,000

5  copyrights to famous musical works, dating back over a century, including, for example, "Take

6  Me Home, Country Roads" (as recorded by John Denver), "Cry Me a River" (as recorded by

7  Justin Timberlake), and "Candy Shop" (as recorded by 50 Cent).

8       41.     Spirit is one of the world's leading independent music publishers.  With a deep

9  catalog spanning seven decades and every musical genre, including "Shape of You" (as recorded

10  by Ed Sheeran), "Holiday" (as recorded by Madonna), and "Livin' La Vida Loca" (as recorded by

11  Ricky Martin), Spirit is a tireless promoter of its songs in film, television, and advertising

12  productions, as well as a range of new media.

13       42.     The entities comprising Universal are part of Universal Music Publishing Group,

14  one of the largest music publishers in the world, with rights to an extensive music catalog,

15  representing iconic standards and hit pop songs alike, including, for example, "Hello" (as recorded

16  by Adele), "Power" (as recorded by Kanye West), and "Ain't No Sunshine" (as recorded by Bill

17  Withers).

18  ## VINKLE AND ITS INFRINGING ACTIVITIES

19       43.     Vinkle is an app that encourages and enables users to create personalized music

20  videos by uploading their personal images and videos into templates that Vinkle provides.  The

21  templates contain a set of stock images and video content displayed in a sequence or stock video

22  content, set to popular, copyrighted music chosen and uploaded to the Vinkle service by

23  Defendant.  Templates often contain text or other graphics added by Vinkle, some of which

24  reference the name or lyrics of the copyrighted musical work synced to the template.  For

25  example, a template set to the Justin Bieber recording "Yummy" contains text showing the title of

26  the song, advertising to users the fact that this specific work is set to the template.

27       44.     In order to create a personalized video, Vinkle's users upload their own images or

28  video to replace the stock images or stock videos in Vinkle's templates.  Vinkle then enables the

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1  user to share the new video, including the copyrighted music, directly from the Vinkle app to

2  various social media platforms, including Facebook, Instagram, Twitter, and Snapchat, or allows

3  the user to download the completed video to their personal device.

4       45.    While users can utilize the Vinkle service for free, Vinkle restricts access to certain

5  templates and subjects its free users to location-based advertising.  Vinkle obtains location data

6  from its users and uses that information to target its free users with advertising that varies

7  depending on the subscriber's location.

8       46.    Vinkle also imposes a watermark on the completed videos of free users, which

9  reads, "Made with Vinkle" and contains the Vinkle logo.  Users cannot remove the watermarks

10  from the videos created while using Vinkle for free.

11       47.    Once the music video is created, the Vinkle app presents its users with two options,

12  "Save without Watermark" and "Save," as well as direct links to multiple social media platforms

13  including WhatsApp, TikTok, Facebook Messenger, Instagram, Snapchat, Facebook, and

14  YouTube.  The Vinkle app also allows the user to copy a link to the video to their device's

15  clipboard.

16       48.    When the user selects "Save without Watermark," Vinkle prompts the user to

17  purchase a premium subscription.  When "Save" is selected, the app creates and stores the work in

18  a section of the app titled "My Works."  This page contains text indicating that the completed

19  video will be stored by the app for seven days and then deleted and prompts the user to download

20  the video to their device prior to expiration of that time.  Prior to its expiration, the music video

21  remains on Vinkle's servers, and the user can copy it to their device at any time.

22       49.    Once a user has selected the template they would like to use, Vinkle prompts them

23  to allow access to the media on their device.  Once the user grants access and selects the images or

24  videos to add to the template, Vinkle uploads the images or videos to its servers and then

25  "produces" the new video, syncing the user's images or video to the visual effects and audio of the

26  template, a process that can take close to a minute.  If the user is using Vinkle without a premium

27  subscription, Vinkle prompts the user to purchase a Vinkle subscription prior to producing the

28  video but allows the user to continue without purchasing.

50.     When a user elects to share their created music video directly to a social media platform, Vinkle copies and distributes that video to the user's device.  In effect, it is impossible to use the Vinkle app to create a video without creating a copy of the copyrighted musical work that Vinkle synced to the Vinkle template, and every music video created on Vinkle contains an additional copy of a copyrighted musical work that Vinkle provided on its system for that purpose.

51.     Vinkle makes money from offering a "premium subscription" to its users.  Upon purchasing a premium subscription, Vinkle no longer imposes a watermark on the premium users' videos, removes all in-app advertising, and provides the user with access to all of its templates. Each of these templates contains stock images or stock videos meant to be replaced by the users, and each is synced to an audio recording of a musical work that Defendant uploaded to its Vinkle service for users to use.  Many of these musical works are owned by Plaintiffs, and Defendant has not obtained any license necessary to reproduce, perform, adapt, or distribute these works.  A premium subscription is offered at the cost of $5.99 per week or $29.99 per year.

52.     Vinkle often holds challenges and contests allowing its users to win prizes in exchange for posting their music videos on social media.  In at least one instance, Vinkle offered cash prizes for the music videos that gathered the most likes on the social media platform Tik Tok by a certain date, directly incentivizing users to share their videos as widely as possible.  In other instances, Vinkle has offered free premium subscriptions to the individuals whose music videos received the most likes.  For these challenges, Vinkle requests that the users post their videos on a specific platform and use hashtags in order to allow Vinkle to see the posts.

53.     Defendant regularly updates the Vinkle app, both to provide technical fixes as well as to add additional templates.  Users can identify the template of their choice in various ways, either by selecting one of the templates suggested by Vinkle under various headings including "For you," "Artist," "Beat," "Suggest," "Birthday," etc., or by searching for a topic, artist, or specific song.  In the search bar, Vinkle provides the suggested text "hot songs," demonstrating Vinkle's understanding that the music synced to the template is an integral part of why users select specific templates available on the app.

54.     Vinkle's users can search the app to find templates that contain copyrighted music

Coblentz Patch Duffy & Bass LLP

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500

415.391.4800 · Fax 415.989.1663

**COMPLAINT AND JURY DEMAND**

1  that they want to use, either by searching for an artist or for the specific song.  For example, a

2  search for the song "Disturbia" identifies a Vinkle-created template set to that musical work, with

3  text identifying the title of the recording synced to the template.  Vinkle also allows users to

4  search by genre and presents templates containing music from multiple artists in that genre.

5       55.     Alternatively, Vinkle's search bar provides "Hot Search[es]," including "love,"

6  "sad," "xxxtentacion" (a musical artist), "birthday," "Naruto," "savage," "anime," and "friends."

7  When a user searches the name of an artist, Vinkle provides the user with templates synced to the

8  music of that artist.  For example, when selecting the "xxxtentacion" search suggested by Vinkle,

9  a template set to the copyrighted musical work "Numb," which was recorded by xxxtentacion,

10  appears and is available to free users of the app.

11      56.     When a user identifies a template that they would potentially use, Vinkle allows the

12  user to view the entire template, showing stock images and videos set to the copyrighted musical

13  works, and listen to the music.  The user can replay the template, and music, an unlimited number

14  of times, each of which constitutes a performance of the copyrighted musical work.

15      57.     Defendant is aware that providing its users access to copies of the latest hits is

16  essential to its business model, as demonstrated by the suggested search "hot songs."  Indeed,

17  many of Vinkle's templates contain copies of many of today's most popular and best-selling

18  songs, such as ones by Justin Bieber, Ariana Grande, and Taylor Swift.  Without Defendant

19  providing users access to songs they know and already enjoy, Vinkle would not have been able to

20  attain such widespread commercial success, including more than 10 million downloads from the

21  Google Play store.

22      58.     Defendant is also aware of the existence and importance of intellectual property

23  rights, while at the same time disregarding those of others.  Vinkle's own Terms of Service advise

24  users that Defendant owns the intellectual property rights in the Vinkle App: "You acknowledge

25  and agree that we possess any and all the lawful rights and interests of the App, including any

26  intellectual property rights involved in the Software and Service. … The information in the App

27  includes but [is] not limited to words, software, photos, all contents in advertisements, the

28  commercial information we offer to you, etc., which are all protected under copyright, patent,

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  trademark as well as all other related laws and regulations.  You are allowed to use these contents

2  only when you have our authorization; no unauthorized reproduction, modification or compilation

3  of these contents or creation of relevant derivative works are permitted."

4    59.    In these terms, Defendant prohibits Vinkle users from engaging in the very

5  behavior upon which the Vinkle app is built—the infringement of copyrighted works and

6  exploitation of those works without a license.

7    60.    Defendant has set up its business model predicated on infringement.  Defendant

8  could choose to obtain the necessary licenses to offer these copyrighted musical works to Vinkle

9  users but it chooses not to because (i) the success of its business model depends on offering free,

10  unlicensed music to users who want to make their own music videos with those songs, and (ii) the

11  cost of complying with the law would cut into Defendant's profits.

12    61.    Due to Defendant's pervasive infringement, Plaintiffs, through undersigned counsel

13  and counsel at their trade association National Music Publishers' Association, have been forced to

14  bring this lawsuit enforce their rights and hold Defendant accountable.

15  **CLAIMS FOR RELIEF**

16  *Count I – Direct Copyright Infringement*

17    62.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 61

18  as if fully set forth herein.

19    63.    Without authorization, Defendant has selected and copied Plaintiffs' musical

20  compositions and synched them to a library of images and videos for the creation of personalized

21  music videos that can be viewed on the Vinkle App and elsewhere.  Defendant has thus engaged,

22  and continues to engage, in the unauthorized reproduction, adaptation, distribution, and public

23  performance of various copyrighted works for which Plaintiffs are the legal or beneficial copyright

24  owners, including those copyrighted works listed on **Exhibit A**, and many others, through

25  Defendant's creation, reproduction, distribution, and performance of video templates synced to

26  such copyrighted works.  The foregoing activity constitutes direct infringement by Defendant in

27  violation of 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4) and 501 *et seq*.

28    64.    The infringement of Plaintiffs' rights in each of their copyrighted works constitutes

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1  a separate and distinct act of infringement.  The list of works on **Exhibit A** is a non-exhaustive,

2  illustrative list of works infringed and will be amended when discovery reveals additional works

3  infringed.

4       65.     Defendant's acts of infringement are willful, intentional, and purposeful, in

5  disregard of and with indifference to Plaintiffs' rights.

6       66.     As a direct and proximate result of Defendant's infringement of Plaintiffs'

7  copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an

8  amount of up to $150,000 with respect to each work infringed, or such other amounts as may be

9  proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. §

10  504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from

11  infringement as will be proven at trial.  Plaintiffs are further entitled to attorneys' fees and costs

12  pursuant to 17 U.S.C. § 505.

13       67.     Defendant's conduct is causing, and unless enjoined by this Court, will continue to

14  cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in

15  money, such that Plaintiffs will have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

16  Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive

17  rights under copyright.

18                         ***Count II – Contributory Copyright Infringement***

19       68.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 67

20  as if fully set forth herein.

21       69.     Vinkle users have reproduced, distributed, adapted, and publicly performed, and

22  continue to reproduce, distribute, adapt, and publicly perform, without authorization various

23  copyrighted works for which Plaintiffs are the legal or beneficial copyright owners, including

24  those copyrighted works listed on **Exhibit A**, and many others.  The foregoing activity constitutes

25  direct infringement by Vinkle users in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

26       70.     Defendant is liable as a contributory copyright infringer because it intentionally

27  induces the direct infringement of its Vinkle users as described above.  In particular, and without

28  limitation, Defendant provides Vinkle users with templates containing unauthorized copies of

1  copyrighted musical works, for them to sync with video and images.  Defendant also provides

2  Vinkle users links to various social media platforms once they have finished creating their music

3  videos and requires users to create a copy of the finished music video in order to share the videos

4  on those platforms. Vinkle highlights users' ability to share their completed music videos

5  containing copyrighted works with their friends and highlights users' ability to utilize templates

6  synced to popular songs on its social media pages.  Vinkle users engage, and have engaged, in

7  massive amounts of direct infringement as a consequence of Defendant's active involvement in

8  and inducement of the infringement.

9        71.    Defendant is also liable as a contributory copyright infringer because it knows of

10  and materially contributes to the direct infringement of Vinkle users as described above.

11  Defendant knows that Vinkle users share the completed music videos and has actual and

12  constructive knowledge of specific instances of users doing so, because the Vinkle app frequently

13  asks users to submit their completed music videos for a chance to win prizes, including free

14  premium subscriptions.  And Defendant knows that it and Vinkle users lack authorization to use

15  the copyrighted music in the templates in any respect.  Nevertheless, Defendant continues to

16  provide the Vinkle app and templates necessary for Vinkle users to commit direct infringement,

17  and actively facilitates the infringement, including via the actions described above.

18        72.    As a result, Defendant is contributorily liable for the unlawful infringement of

19  Plaintiffs' copyrighted works, including those listed on **Exhibit A** hereto, in violation of Plaintiffs'

20  exclusive rights under the copyright laws of the United States.  The list of works on **Exhibit A** is a

21  non-exhaustive, illustrative list of works infringed and will be amended when discovery reveals

22  additional works infringed.

23        73.    The infringement of Plaintiffs' rights in each of their copyrighted works constitutes

24  a separate and distinct act of infringement.

25        74.    Defendant's acts of infringement are willful, intentional, and purposeful, in

26  disregard of and with indifference to Plaintiffs' rights.

27        75.    As a direct and proximate result of Defendant's infringement of Plaintiffs'

28  copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1 amount of up to $150,000 with respect to each work infringed, or such other amounts as may be

2 proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. §

3 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from

4 infringement as will be proven at trial.  Plaintiffs are further entitled to attorneys' fees and costs

5 pursuant to 17 U.S.C. § 505.

6      76.     Defendant's conduct is causing, and unless enjoined by this Court, will continue to

7 cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in

8 money, such that Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

9 Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive

10 rights under copyright.

11               ***Count III – Vicarious Copyright Infringement***

12      77.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 76

13 as if fully set forth herein.

14      78.     Vinkle users have reproduced, distributed, adapted, and publicly performed, and

15 continue to reproduce, distribute, adapt, and publicly perform, without authorization, various

16 copyrighted works for which Plaintiffs are the legal or beneficial copyright owners, including

17 those copyrighted works listed on **Exhibit A**, and many others.  The Vinkle service provides its

18 users links to multiple social media platforms once they have finished creating their music videos

19 and requires users to create a copy of the finished music video in order to share the videos on

20 those platforms.  The forgoing activity constitutes direct infringement by Vinkle users in violation

21 of 17 U.S.C. §§ 106 and 501 *et seq*.

22      79.     Defendant is liable as a vicarious copyright infringer for the direct infringement of

23 its users as described above.  Defendant has the right and ability to supervise and control the

24 infringing activities that occur through use of the Vinkle service, and at all relevant times, has

25 derived direct and substantial financial benefits from the infringement of Plaintiffs' copyrighted

26 works occurring on its service.  In particular, Defendant creates, maintains, and controls the library

27 of unauthorized music on the Vinkle service, including Plaintiffs' musical works, that it has

28 uploaded and provided to users through its templates. The availability and use of the Vinkle

infringing library of music, and specifically Plaintiffs' copyrighted works in that library, is designed to and does attract users to the Vinkle app, which makes the Vinkle app more popular and profitable, including by growing Vinkle's user base, advertising revenues, and paid subscriptions.  Defendant further derives a direct and substantial benefit from its users reproducing and sharing their videos containing Plaintiffs' copyrighted music, which attracts users to the Vinkle app and makes the Vinkle app more popular and profitable, including by growing Vinkle's user base, advertising revenues, and paid subscriptions.

80.     As a result, Defendant is vicariously liable for the unlawful infringement of Plaintiffs' copyrighted works, including those listed on **Exhibit A** hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.  The list of works on **Exhibit A** is a non-exhaustive, illustrative list of works infringed and will be amended when discovery reveals additional works infringed.

81.     The infringement of Plaintiffs' rights in each of their copyrighted works constitutes a separate and distinct act of infringement.

82.     Defendant's acts of infringement are willful, intentional, and purposeful, in disregard and with indifference to Plaintiffs' rights.

83.     As a direct and proximate result of Vinkle's infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.  Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

84.     Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive rights under copyright.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**COMPLAINT AND JURY DEMAND**

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment from this Court against Defendant as follows:

a.   For a declaration that Defendant has willfully infringed musical works owned and/or controlled by Plaintiffs in violation of the Copyright Act;

b.   For statutory damages pursuant to 17 U.S.C. § 504(c) in an amount up to the maximum provided by law, arising from Defendant's willful violations of Plaintiffs' rights under the Copyright Act; or in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages and Defendant's profits from the infringement, in an amount to be proven at trial; in all events, in an amount of no less than an amount up to $150,000 per work infringed;

c.   For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Plaintiffs' copyrights, including a permanent injunction requiring that Defendant and its officers, agents, servants, employees, attorneys, directors, successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing, or materially contributing to or participating in the infringement of any of Plaintiffs' exclusive copyright rights, including without limitation in the musical works listed on **Exhibit A;**

d.   For the award of Plaintiffs' reasonable attorneys' fees and costs in this action pursuant to 17 U.S.C. § 505;

e.   For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

f.   For such other and further relief as the Court deems proper.

1

## **JURY TRIAL DEMAND**

2

Plaintiffs hereby demand a trial by jury of all issues that are so triable.

3

4

DATED:  June 15, 2022                    OPPENHEIM + ZEBRAK, LLP

5

6

7       By: /s/ *Alexander Kaplan*

8            ALEXANDER KAPLAN (*Pro Hac Vice*
             *Application to be Filed*)
             MATTHEW E. COOPER *Pro Hac Vice*
9            *Application to be Filed)*
             Attorneys for Plaintiffs
10

11      DATED:  June 15, 2022                    COBLENTZ PATCH DUFFY & BASS LLP

12

13

14      By: /s/ *Thomas A. Harvey*
             THOMAS A. HARVEY
15           Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1

## <u>ATTESTATION REGARDING ELECTRONIC SIGNATURES</u>

I, Thomas A. Harvey, the filer of this document, attest pursuant to N.D. Cal. L. R. 5-1(i)(3) that all other signatories to this document, on behalf of whom this filing is submitted, concur in the filing's content and have authorized this filing.

Date:  June 15, 2022                                        */s/ Thomas A. Harvey*

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# Exhibit A

**<u>EXHIBIT A</u>**

**Examples of Plaintiffs' Musical Compositions**
**Infringed by Vinkle**

| Title of Work | Copyright Registration No. | Plaintiff(s)* |
|---|---|---|
| 10,000 Hours | PA 2-212-950 | Big Machine; Universal |
| Adore You | PA 2-265-129 | Concord; Universal |
| All Time Low | PA 2-048-482 | Universal |
| American Boy | PA 1-599-813; PA 1-659-161 | Reservoir; Universal |
| Anaconda | PA 2-062-630 | Universal |
| Around The World | PA 895-701 | Universal |
| Bad And Boujee | PA 2-072-685; PA 2-097-856 | Reservoir; Universal |
| Bad Guy | PA 2-190-142 | Universal |
| Barbie Girl | PA 890-830 | Universal |
| Because Of You | PA 1-643-835; PA 1-167-514 | Universal |
| Believer | PA 2-076-951 | Universal |
| Blinding Lights | PA 2-223-543 | Universal |
| Boyfriend | PA 2-233-485 | Reservoir; Universal |
| California Gurls | PA 1-711-654; PA 1-734-423 | Concord; Universal |
| Cha Cha Slide | PAu 2-515-830; SR 347-046 | Spirit |
| Clarity | PA 1-856-736 | Universal |
| Criminal | PA 1-767-537 | Universal |
| Demons | PA 1-796-478 | Universal |
| Disturbia | PA 1-692-669 | Universal |
| Don't Tell 'Em | PA 2-062-936 | Universal |
| Eenie Meenie | PA 1-703-249 | Universal |
| Everything I Wanted | PA 2-223-334 | Universal |
| Fuck Love | PA 2-095-667 | Universal |
| Gimme More | PA 1-632-033; PA 1-680-545 | Reservoir; Universal |
| Give Me Everything | PA 1-820-420 | Universal |
| Havana | PA 2-198-007 | Reservoir |
| Hey Mama | PA 1-989-993 | Universal |
| Hostage | PA 2-183-777 | Universal |
| Ice Cream | PA 2-268-882 | Reservoir |
| Idontwannabeyouanymore | PA 2-183-785 | Universal |
| In The End | PA 1-092-513 | Universal |
| Intentions | PA 2-236-318 | Peer; Universal |
| Kiss It Better | PA 2-084-144 | Universal |
| Locked Away | PA 2-157-426; PA 1-994-385 | Universal |
| Mad Hatter | PA 2-101-209 | Universal |
| Maneater | PA 1-597-058;  PA 1-164-461 | Reservoir |
| Mi Gente | PA 2-236-423 | Universal |
| Mistletoe | PA 1-780-233 | Universal |
| Motive | PA 2-268-906 | Reservoir; Universal |
| Moves Like Jagger | PA 1-801-572 | Universal |

| New Americana | PA 2-059-974 | Universal |
|---|---|---|
| One Kiss | PA 2-150-084 | Universal |
| Rain On Me | PA 2-282-535; PA 2-283-423 | Concord |
| Redbone | PA 2-063-056 | Universal |
| Remember The Name | PA 1-163-444 | Universal |
| River | PA 2-023-410 | Universal |
| SexyBack | PA 1-165-048 | Reservoir; Universal |
| Shape Of You | PA 2-158-357; PA2-083-354 | Spirit; Universal |
| Stitches | PA 1-993-016 | Hipgnosis |
| Walls Could Talk | PA 2-113-518 | Universal |
| Where Is The Love? | PA 1-249-866; PA 1-220-894; PA 1-158-849 | Reservoir; Universal |
| Without Me | PA 2-181-449; PA 2-185-008; PA 2-193-586 | Reservoir; Universal |
| You Da One | PA 1-778-697 | Universal |
| You Should See Me In A Crown | PA 2-173-035 | Universal |
| Yummy | PA 2-230-613 | Peer; Universal |